UNITED STATES of America, Plaintiff,

v.

Malcom Derome McGEE, Defendant.

No. 00–CR–105–H.

United States District Court, N.D. Oklahoma.

Dec. 3, 2002.

Malcom Derome McGee, Pollock, LA, Paul D Brunton, Jack (John B) Schisler, Federal Public Defender's Office, Robert Russell Nigh, Jr, Brewster & De Angelis PLLC, Tulsa, OK, Thomas D McCormick, Oklahoma City, OK, for Malcom Derome McGee.

### ORDER

HOLMES, District Judge.

This matter comes before the Court for sentencing of Defendant Malcom Derome McGee in accordance with the opinion of the Tenth Circuit Court of Appeals entered May 29, 2002.

On November 1, 2000, following three days of trial, Mr. McGee was convicted under a three-count Indictment. The sole remaining issue is whether to sentence Mr. McGee for a single violation of 21 U.S.C. § 843(b) pursuant to his conviction under Count Three of that Indictment.

I

The procedural history of this case has been addressed at length with the parties and is set forth in detail in the Court's order of October 22, 2002 (the "Order"). A copy of the Order is appended hereto as Attachment 1.

Pursuant to the Order, the Court requested the parties to respond, *inter alia,* to the following question:

1. Whether the law of the Tenth Circuit is as follows:

 i. With respect to a one-count indictment that refers to multiple violations of federal law, a defendant can only be sentenced for a single violation because a "count" in an indictment can, under no circumstances, result in more than a single violation;

 ii. this is true even if evidence of multiple violations is adduced at trial without objection, the question is posed to the jury on a verdict form without objection, and the jury returns a verdict of multiple violations without objection; and

 iii. an indictment that includes a count of unlawful use of a telephone or other communication device, but that fails to identify the specific telephone call charged, does not

give adequate notice of which telephone call forms the basis of the alleged violation at issue.

The Government responded that the answer on behalf of the United States was "yes" to questions (i) and (ii); the answer on behalf of the United States was "no" to question (iii). The United States' responses to these questions are hereby acknowledged for the record. For the reasons set forth in the Order, the Court disagrees with the United States with respect to questions (i) and (ii).

## II

The Court believes that every attorney has a duty to ensure the integrity of the appellate process. As fully described in the Order, the Court finds that the attorneys failed to meet that duty here. The basis for the Court's decision, as well as relevant portions of the record, including Court orders, were never presented to the appellate Court. The issue was misstated by Petitioner, and confessed by the United States, and the materials submitted by the parties did not accurately reflect the record in the case. As a result, the Court of Appeals was never given the opportunity to consider this Court's decision and, more importantly, the question of law embodied in that decision. The parties' actions caused the system to fail, and the attorneys must consider their respective responsibilities to the legal system to avoid any such failure in the future.

## III

The Court further believes that every judicial officer has a duty to ensure the integrity of the appellate process. First, the Court must give all parties a full and fair opportunity to make a record before the trial court, and to frame issues for possible appeal. In addition, the Court has a high burden to fully explain the bases for its decisions. In this regard, the parties and the Court share a mutual obligation to record each matter of disagreement and to expressly identify the legal and factual basis for such disagreement.

A further responsibility of this Court to the appellate process is involved in this case—the responsibility to respect and implement the mandate of the Court of Appeals. In a case in which the parties failed to discharge their duty to the Court of Appeals, the Court should not further dishonor the appellate process by disregarding the mandate. In short, two wrongs do not make a right.

Sentencing in this matter is set for December 4, 2002, at 9:30 a.m., at which time Mr. McGee will be sentenced for a single violation of 21 U.S.C. § 843(b).

IT IS SO ORDERED.

## ATTACHMENT 1

(to Order of December 3, 2002)

### *ORDER*

On April 5, 2001, the Court sentenced Defendant Malcom Derome McGee, *inter alia*, to a term of imprisonment of 56 years pursuant to a jury verdict finding beyond a reasonable doubt that Defendant committed seven (7) separate violations of 21 U.S.C. § 843(b). Judgment was entered in the case on April 19, 2001, and Defendant McGee filed his notice of intent to appeal on April 27, 2001. By judgment filed May 29, 2002, the Court of Appeals for the Tenth Circuit reversed the sentence imposed by the Court and remanded the case for resentencing. A hearing was scheduled for October 4, 2002.

On August 19, 2002, the Court directed the attorneys of record for the October 4 hearing as follows:

... to file, no later than September 27, 2002, a detailed joint statement of the

case setting forth all relevant facts, pleadings (including the indictment), excerpts from pleadings, colloquies, instructions, verdicts and motions in this matter pertaining to the issue of the sentencing of defendant McGee for seven (7) separate violations of Title 21 U.S.C. § 843(b). Such statement shall describe all the relevant events and rulings in chronological order. The indictment, all orders entered by the court, and all statements contained in transcripts of Court proceedings shall be quoted in their entirety as they relate to this issue.

(08/19/92 Order.)

On September 27, 2002, the parties filed a document entitled "Joint Statement of the Case." On September 30, 2002, the Court issued an order explaining that the signatories'[1] had failed to comply with the Court's August 19, 2002, order and directed the signatories to cure their failure by submitting a complying document no later than noon on October 3, 2002. On October 3, 2002, the parties filed a "Supplemental Joint Statement of the Case." At the hearing on October 4, the Court noted that this document also failed to comply with the Court's August 19 order. On October 15, 2002, pursuant to the Court's order of October 4, 2002, the signatories filed a "Second Supplemental Joint Statement of the Case." A copy of that document is attached hereto as Appendix 1.

Based on the record in the case, the Court finds as follows:

1. On August 8, 2000, the Grand Jury in the Northern District of Oklahoma returned a three-count Indictment (the "Indictment") against Malcom McGee, which provided in applicable part as follows:

1. David E. O'Meilia, Scott Woodward, Robert T. Raley, Paul D. Brunton, Jack Schisler,

## Count I

### [21 U.S.C. § 846]

Beginning in or around July, 2000, the exact date being unknown to the Grand Jury, and continuing until July 15, 2000, in the Northern District of Oklahoma, and elsewhere, MALCOM DEROME McGEE, aka "Malik", aka "Mike McGee", defendant herein, did knowingly and intentionally conspire, confederate and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, as follows:

\* \* \* \* \* \*

2. To use interstate communication facilities, that is a telephone, in committing and/or causing, or facilitating the commission of acts constituting a felony under Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 843(b).

\* \* \* \* \* \*

### MEANS AND METHODS OF THE CONSPIRACY

The objects of the conspiracy would be accomplished and were accomplished as follows:

\* \* \* \* \* \*

3. The Defendant MALCOM McGEE, and others known and unknown to the Grand Jury, would and did utilize telephones (cellular and otherwise), and paging devices, in order to communicate with others regarding the possession and delivery of the Phencyclidine (PCP).

### OVERT ACTS

To effect the objects of the conspiracy, the defendant and other co-conspirators

Thomas McCormick, and Rob Nigh, Jr.

committed various overt acts within the Northern District of Oklahoma and elsewhere, among which were the following:

\* \* \* \* \* \*

10. Between on or about July 14 and 15, 2000, the courier placed a series of telephone calls from Tulsa, Oklahoma to MALCOM McGEE, the defendant herein, via cellular telephone number and pager number that McGEE had provided. MALCOM McGEE, the defendant herein, also placed a series of telephone calls to the courier while located in Tulsa, Oklahoma, within the Northern District of Oklahoma. The purpose of the telephone calls was to discuss the possession and delivery of the Phencyclidine (PCP). During these calls, the need for money by the courier was discussed. It was further discussed that MALCOM McGEE, the defendant herein, would be traveling to Tulsa, Oklahoma to take possession and delivery of the 2000 milliliters of Phencyclidine (PCP).

\* \* \* \* \* \*

## COUNT THREE

### [21 U.S.C. § 843(b) ]

On July 14, and 15, 2000, in the Northern District of Oklahoma, MALCOM McGEE, defendant herein, did knowingly, intentionally, and unlawfully use a communication facility, that is a telephone, in committing, causing, and facilitating the commission of an act consti-

tuting a felony under Title 21, United States Code, Section 841(a)(1), in that the defendant used the telephone to discuss various matters concerning Schedule III Controlled Substance. All in violation of Title 21, United States Code, Section 843(b).

2. The Indictment did not limit the charge to a single telephone call or a single violation of the statute, but instead plainly referred to multiple telephone calls over a period of two days. The Indictment did not identify any specific telephone call as forming the basis for an alleged violation of 21 U.S.C. § 843(b).

3. Defendant did not object to the Indictment as providing insufficient notice of the crime charged, or otherwise move for a bill of particulars seeking to identify the particular call or calls at issue.

4. At trial, the United States introduced evidence of ten (10) separate telephone calls which were recorded and introduced as Exhibits 9 and 10. The evidence included tape recordings of seven (7) separate telephone calls between Defendant and the United States' primary witness, Ramona Hampton. Defendant did not object to the introduction of this evidence.

5. In its closing argument, the United States argued that the jury should give great weight to the multiple telephone calls introduced into evidence in the case and, in particular, the taped telephone calls reflected on Exhibits 9 and 10.[2]

6. Neither the United States nor Defendant submitted any proposed instruc-

---

**2.** At closing, on behalf of the United States Mr. Raley argued in part as follows:

Ladies and gentlemen, you heard testimony that Annette Williams then contacted DEA. Why? We've got a large container of Phencyclidine traveling from Los Angeles, California to Washington, D.C. A source city, a destination point. She got the Drug Enforcement Administration involved. Spe-

cial Agent Fraga and Special Agent Eric Katz went to the Ramada and began working with Ramona Hampton, continued the phone calls. At this time they decided to use the hotel room phone and they would continue to page, using the numbers that the defendant provided, and he would in return, call back to the hotel room. All of these conversations recorded, all of them

tions to require that the jury unanimously agree on a single specific telephone call in order to form the basis for a violation of 21 U.S.C. § 843(b).

7. Without objection by the parties, the Court's instructions to the jury did not contain any instruction that required the jury to unanimously agree beyond a reasonable doubt to a single specific telephone call in order to form the basis for a violation of 21 U.S.C. § 843(b).

8. A single Verdict Form was submitted to the jury[3] without objection.[4] With respect to this issue, the Verdict Form provided in its entirety as follows:

### VERDICT FORM

We the Jury, duly impaneled and sworn in the above case, find as follows:

\* \* \* \* \* \*

### COUNT THREE

Use of an interstate communication facility in committing, causing or facilitating a violation of Sections 841(a)(1) and 841(b)(1)(A)(iv) of Title 21 of the United States Code.

NOT GUILTY_____ GUILTY_____

If you found Defendant "Guilty" on this Count Three, please enter the number of telephone calls you have determined

beyond a reasonable doubt that were made in violation of Section 843(b) of Title 21 (use of an interstate communication facility) for the purpose of committing, causing or facilitating a violation of Sections 841(a)(1) and 841(b)(1)(A)(iv) of Title 21.

NUMBER_____

9. The jury marked an "X" on the line indicating "guilty," and placed a "7" on the line specifying the number of telephone calls that the jury determined beyond a reasonable doubt were made in violation of 21 U.S.C. § 843(b).

10. On March 1, 2001, the Court ordered the United States Probation Office ("Probation Office") to prepare a presentence investigation report ("PSI") consistent with the jury's verdict that Defendant was guilty of seven (7) separate violations of 21 U.S.C. § 843(b).[5] That order stated in its entirety as follows:

### ORDER

The Court hereby continues the sentencing of Defendant Malcom McGee scheduled for March 2, 2001. Sentencing is reset for April 5, 2001, at 9:30 a.m. Sentencing is continued to allow time for the appropriate amendments to be made to Defendant's Pre-sentence Report,

---

taped, all of them monitored. I urge you to listen to Government's Exhibit 10. It's a tape recording of all of those phone calls. (Closing Argument Tr. at 11:23 to 12:17.)

3. Notwithstanding 10th Cir. R. 10.3(A) and 10.3(C), the Verdict Form was not designated by either party as part of the record in this case. Moreover, at the hearing on October 4, the following exchange occurred:

THE COURT: The verdict form was not before the appellate court, right?
MR. McCORMICK: That's correct.
(10/04/02 Hr'g Tr. at 23:12–14.)

4. The parties agree, and have agreed throughout the appeal in this case, that there was no objection to the Verdict Form submitted to

the jury. At the October 4 hearing, the Court raised some questions regarding this issue. However, for purposes of the present determination, the Court must rely upon the record as it was before the Tenth Circuit, because such record forms the basis of the mandate in this case. This record clearly reflects that there was no objection to the Verdict Form by either Defendant or the United States.

5. Notwithstanding 10th Cir. R. 10.3(A) and 10.3(C), this March 1 order was not designated by either party as part of the record in this case.

and, if necessary, the filing of objections to the amended Pre-sentence report. The amendments to the Pre-sentence Report shall consist of: (1) the effect of the Court's arrest of judgment on Count One, entered this date; (2) a computation of the appropriate sentence under Count Three for each of the seven (7) offenses defined in 21 U.S.C. § 843, as found by the jury and noted on the Verdict Form; (3) a notation of the Court's ability to require consecutive sentences for each of the seven (7) offenses under 21 U.S.C. § 843, each of those sentences to run concurrently with the sentence at Count Two, pursuant to U.S. Sentencing Guidelines Manual § 5G1.2; and (4) an increase in the Special Assessment fee to reflect that Defendant was found guilty of a total of eight (8) offenses against the United States.

11. Thereafter, Defendant objected to the Court's sentencing Defendant for seven (7) separate violations of 21 U.S.C. § 843(b). The Supplemental Statement of the Case filed by the parties on October 3, 2002, described Mr. McGee's argument in this regard as follows:

On March 29, 2001, McGee, through Mr. Schisler, filed Objections to the revised PSI, specifically objecting to the Probation Office's calculation of the sentencing options for Count Three, arguing in effect, that the language of Count Three gave the defendant no notice of the possibility of seven (7) separate convictions springing from one single count. The seven phone calls merely advised the defendant that the prosecutor could have filed separate charges for each phone call, but instead chose to file a single count. McGee's objection went on to argue that the notion that a special verdict form could substitute for the notice provided by the Bill of Indictment to charge multiple violations of Title 21 United States Code § 843(b) is "at loggerheads with the doctrine of due process as set out in the 5th and 14th Amendments to the Constitution and the notice requirement of the 6th Amendment."

12. At sentencing on April 5, 2001, the United States joined Defendant's objection to sentencing Defendant for seven (7) separate violations of 21 U.S.C. § 843(b), arguing as follows:

MR. RALEY: Your Honor, if I may before I address the Court with the next motion, just for purposes of the record with regard to Count three issue, if I might have a brief comment. That the government would concur with the defendant's argument regarding how the Indictment was charged. And for purposes of the *Apprendi* issue, I believe as an exercise of caution, we did submit that particular verdict form to the jury and they did come back with a finding of seven particular phone calls, but it would be our argument that we did charge a one count 843 and not the seven particular offenses. And I would like to make that record.

\* \* \* \* \* \*

THE COURT: Would you find yourself in disagreement with the idea that the jury found beyond a reasonable doubt that there were seven separate violations of that statute.

MR. RALEY: No, Your Honor.

THE COURT: That's what they found; right?

MR. RALEY: Yes, Your Honor.

THE COURT: All right. And they found it under Count three, right?

MR. RALEY: Yes, Your Honor.

(Sentencing Hr'g Tr. at 14–15.)

13. Pursuant to, and in accordance with, the jury's verdict, the Court sen-

tenced Defendant to eight (8) years for each of the seven (7) separate violations determined by the jury beyond a reasonable doubt, for a total of 56 years. The parties do not dispute that, in light of the applicable enhancement, eight (8) years is the proper sentence for a single violation of 21 U.S.C. § 843(b). Therefore, if the jury properly returned a verdict for seven (7) separate violations of 21 U.S.C. § 843(b), 56 years would be the proper sentence.

14. Defendant McGee filed his notice of intent to appeal on April 27, 2001.

15. On September 4, 2001, Defendant filed his brief with the Court of Appeals. With respect to this issue, that brief provided in its entirety as follows:

## II. THE SENTENCE IMPOSED UNDER COUNT 3 WAS ILLEGAL

### A. Standard of Review

An appellate court views the legality of a sentence de novo. *United States v. Dunn,* 946 F.2d 615 (9th Cir.1991).

### B. Discussion

This issue was raised at sentencing when the defendant objected to the imposition of a sentence higher than the statutory maximum. Said objection was overruled. Sent. Tr. 2–16.

The defendant was convicted under Count 3 of the indictment for using a communication facility to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). Since the defendant had one or more prior convictions, his punishment could not be more than 8 years pursuant to 21 U.S.C. § 843(d). USSG § 5G1.1(a) provides that when sentencing on a single count of conviction, where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence. Judicial interpretation of USSG § 5G1.1(a) confirms its clarity. When the guidelines are higher than the statutory maximum, section 5G1.1(a) comes into play and reduces the sentence to the statutory maximum. *United States v. Cook,* 938 F.2d 149 (9th Cir.1991). The statutory maximum displaces any higher guideline sentence, regardless of the status of the offender. *United States v. Dunn, supra.*

The defendant submits that his sentence under Count 3 should have been the statutory maximum of 8 years and not 56 years as imposed by the trial court.[6]

---

6. By contrast, Defendant stated at the October 4, 2002, hearing as follows:
THE COURT: Well, the bottom line in this case is whether or not the verdict of the jury that there were seven separate and distinct violations of this law which would yield a 56 year sentence, whether that verdict can be reached—
MR. McCORMICK: I don't under—
THE COURT: —under a single count. That's what was argued below, right?
MR. McCORMICK: Okay. Yes, that's correct.
THE COURT: Okay. That's the issue. If it can be reached, 56 years is the correct sentence, right?
MR. McCORMICK: If it can be reached legally, yes, of course.
THE COURT: Right, if you can have those seven violations. So the issue is solely not eight years for a single count, the issue is whether or not this determination by the jury can be given and sentenced on, whether you can go back to the jury and they can come back with a verdict of seven separate and distinct violations when it is originally charged in the Indictment under a single count, right?
MR. McCORMICK: Correct.
THE COURT: Okay. Where do you raise that issue in your brief?

 

16. On October 22, 2001, the United States filed its response brief with the Court of Appeals. With respect to this issue, that brief provided in its entirety as follows:

The government asserts that the sentence McGee received was illegal and improper. McGee was convicted after jury trial as to Count Three of the Indictment, which charged him with: knowingly, intentionally and unlawfully using a communication facility, (a telephone), in committing, causing, and facilitating the commission of a felony under Title 21, United States Code, Section 841(a)(1), pursuant to 21 U.S.C. § 843(b); in that he used a telephone to discuss various matters concerning the possession with intent to distribute and distribution of phencyclidine (PCP). (Doc. 7). [Fn. 4 Count Three of the Indictment alleged one (1) count of a violation of Title 21, United States Code, Section 843(b).]

The issue with regard to Appellant's sentence and objection to the Presentence Investigative report (PSI) arose during sentencing on April 5, 2001, specifically a change in the PSI involving the punishment range for the conviction on Count Three. The PSI dated February 26, 2001, treated Count Three as *one* individual count of conviction, as it was alleged in the Indictment. However, the revised PSI, dated March 1, 2001, treated Count Three as *seven* individual counts of conviction, by virtue of the verdict form sent to the jury, asking the

MR. McCORMICK: I do not because there was not any question, there's no question about it here, there was no question about it with the Tenth Circuit that this jury did in fact return a verdict of guilty under Count three. They also returned a verdict that he did make seven telephone calls which were found beyond a reasonable doubt seven violations of the statute. Only under one count however.

THE COURT: Right.

MR. McCORMICK: There's no question about this.

THE COURT: So isn't the question, the legal question whether you can have seven violations under one count?

MR. McCORMICK: You can have 7 or 700, it doesn't make any—

MR. McCORMICK:—any difference, correct.

THE COURT: Don't you have to have the verdict form to consider that issue?

MR. McCORMICK: Well, not necessarily, no because I designated the entire jury trial transcript to the Tenth Circuit and I designated the entire sentencing transcript to the Tenth Circuit. I attached to my brief, as required, the sentencing transcript in its entirety in regard to this issue. So I don't think there was any question about the fact that this jury did in fact return a verdict of guilty under Count three for seven viola-

tions. The verdict form—the verdict forms, in my judgment, would be superfluous because that was clearly reflected on the jury trial transcript, and clearly reflected in the sentencing transcript, and clearly reflected in your order which I attached to my brief. There's no question about that.

THE COURT: No question about what? You didn't designate it for the record?

MR. McCORMICK: I did not designate the verdict form, that's correct.

THE COURT: What was the basis upon which this Court entered sentence?

MR. McCORMICK: On seven violations.

THE COURT: Right.

MR. McCORMICK: Right.

THE COURT: What was the basis? Where did I come up with that?

MR. McCORMICK: Because you went seven times eight equals 56.

THE COURT: But where did I find seven violations.

MR. McCORMICK: From the jury verdict.

THE COURT: Right.

MR. McCORMICK: Right.

THE COURT: On the verdict form.

MR. McCORMICK: Correct.

THE COURT: All right. So that was the basis of sentencing, right?

MR. McCORMICK: As far as I know, yes, sir.

(10/04/02 Hr'g Tr. at 40:2 to 42:25.)

jurors to determine how many particular telephone calls were made. [Fn. 5 The jury found that seven particular telephone calls were made in violation of Title 21, United States Code, Section 843(b).] See Attachment A, Presentence Investigative Report, dated February 26, 2001 and Attachment B, Revised Presentence Investigative Report, dated March 1, 2001, and Sentencing Transcript of April 5, 2001 (Vol. VI, pp. 2–16).

According to the February 26, 2001, PSI, the Appellant could have been sentenced up to 8 years, pursuant to 21 U.S.C. § 843(d), due to Appellant's prior drug conviction. The Sentencing Court overruled Appellant's objections to the revised PSI, dated March 1, 2001, and sentenced the Appellant to a term of eight (8) years to be imposed for each of the seven offenses, to run concurrently, for a total of 56 years. (Sentencing Trans., Vol. VI, p. 26).

Count Three of the Indictment charge McGee with one (1) count of a violation of 21 U.S.C. § 843(b), and provided for a statutory maximum sentence of eight (8) years.

> A sentence is illegal if it exceeds the statute under which the charge is alleged or, in other words, is one which the judgment of conviction does not authorize. *United States v. Morgan,*

346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954); *United States v. Peredo,* 884 F.2d 1029, 1031 (7th Cir. 1989); *see also, Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962).

*United States v. Savely,* 814 F.Supp. 1519 at 1523.

As applied in this case, McGee was charged in Count Three, with one count of a 21 U.S.C. § 843(b) violation, providing for a statutory maximum sentence of eight (8) years, based upon his previous drug conviction. The Sentencing Court improperly sentenced McGee to fifty-six (56) years, based upon a jury determination that McGee made a total of seven different telephone calls. This sentence is improper, illegal and should be remanded to the district court for resentencing consistent with the statutory maximum sentence for the count of conviction, eight (8) years.[7]

17. By judgment dated May 29, 2002, the Court of Appeals entered its opinion regarding Defendant's appeal. With respect to this issue, that opinion stated in its entirety as follows:

> With respect to his sentence, Mr. McGee was indicted and convicted under 21 U.S.C. § 843(b) of only one count of using a telephone to facilitate the commission of the § 841(a)(1) felony. A violation of § 843(b) has a maximum statu-

---

7. By contrast, the United States stated at the hearing on October 4 as follows:

THE COURT: Okay. So isn't the appellate issue whether you can go to the jury with seven violations? That's not an illegal sentence issue, that's an issue as to whether or not you can go to the jury with the seven because if you can, and they come back as they did, with seven beyond a reasonable doubt determinations of guilt for seven separate offenses, 56 years is the right sentence, if you can. But you say they didn't right?

MR. RALEY: That's assuming that you could.
THE COURT: Right?
MR. RALEY: Correct.
THE COURT: Okay. So it's not about illegal sentencing jurisprudence, it's about you can't get seven counts or seven violations out of a single count, right?
MR. RALEY: That's correct, Your Honor.
(10/04/02 Hr'g Tr. at 17:16 to 18:9.)

tory sentence of eight years. Contrary to the indictment, the revised presentence investigation report (PSI) treated Count 3 as having charged one violation for each of the seven telephone calls Mr. McGee made to Ms. Hampton. Relying on the revised PSI, the district court sentenced Mr. McGee for seven convictions, imposing eight-year sentences with respect to each telephone call for a total of fifty-six years.

"We review the district court's factual findings regarding sentencing for clear error and review its legal interpretation of the Sentencing Guidelines de novo." *United States v. Arevalo*, 242 F.3d 925, 927 (10th Cir.2001). Mr. McGee argues, and the government agrees, that the maximum possible sentence on Count 3 is eight years because the indictment charged Mr. McGee with only one violation of § 843(b). The revised PSI incorrectly assessed seven violations of the statute and the district court sentenced Mr. McGee accordingly. Consequently, we reverse the sentence imposed by the district court and remand for resentencing on Count 3.

**8.** The Supplemental Joint Statement of the Case, filed October 3, 2002, stated at paragraph 11 as follows:

On September 4, 2001, Appellant's Opening Brief was filed in the Tenth Circuit Court of Appeals; presenting two issues for appellate review. (Appellant's Opening Brief—Exhibit 12). [Fn. 3. Appellant, McGee, was represented by Mr. Thomas McCormick for purposes of his appeal to the Tenth Circuit Court of Appeals.] The first issue presented for review was whether there was sufficient evidence to convict under Count Two of the Indictment. The second issue for review, and at issue presently, is whether an illegal sentence was imposed at sentencing. Regarding whether there was an illegal sentencing as to Count Three, the Appellant set forth in his brief the standard of review, *de*

18. Defendant argues, and the United States agrees, that Defendant's brief to the Court of Appeals "mirrored" Defendant's argument made to this Court in connection with Defendant's sentencing on the seven (7) separate violation of 21 U.S.C. § 843(b).[8]

19. Defendant argues, and the United States agrees, that a full and fair record with respect to this issue was before the Court of Appeals, notwithstanding the fact that the record did not contain either the Verdict Form or the order of March 1 directing the Probation Office to prepare a PSI consistent with the jury verdict reflected on that Verdict Form.

20. Defendant argues, and the United States agrees, that the opinion of the Court of Appeals, therefore, decided in Defendant's favor the issues raised by Defendant at sentencing in his March 29, 2001, objections to the revised PSI. Those objections stated as follows:

Mr. McGee also objects to probation officer's calculations in regards to sentencing options for Count Three, as stated in paragraphs 48, 49, 51, 52, 55 and 56. In these paragraphs, the probation officer contends that Count Three consists of

*novo.* (Exhibit 12, p. 6). Appellant then argued that the sentencing issue was raised during the sentencing hearing which was overruled by the District Court. Appellant's brief referenced the Sentencing Transcript, and page numbers which were part of the record designated for appellate review. (Sentencing Hearing Transcript—Exhibit 9). *Appellant's argument in his brief mirrored McGee's objections to the PSI as revised March 1, 2001, pursuant to the March 1, 2001 District Court Order.* (Attached herein as Exhibits 5 and 6 respectfully). Appellant's brief also attached as Appendix C, the relevant portions of the April 5, 2001 Sentencing Hearing (Exhibit 9, herein, p. 2–16 and Appendix C in Appellant's brief, p. 2–16). (Emphasis added).

seven separate offenses, each of which carries its own set of punishments—prison time, supervised release, Special Monetary Assessments and fines. It is counsel's understanding that this calculation is reflective of the information provided to the parties in the Court's order (filed and entered March 1, 2001; Document # 40).

While counsel would agree that 21 U.S.C. § 843 states "... each separate use of a communication facility shall be a separate offense under this subsection ...", this statutory language does not compel a finding of seven separate felony convictions. The language simply provides the prosecuting authority the option of filing seven separate charges. The language of Count Three, even read in conjunction with 18 U.S.C. § 843(b), gives the defendant no notice of the possibility of seven separate convictions springing from this single count. It merely advises the defendant that the prosecutor could have filed a separate charge for each provable use of a telephone, but chose instead to file a single count.

The fact that the jury found seven separate incidents of use of a telecommunications facility is also not compelling on this issue. The notion that a special verdict form could substitute for the notice provided by a true bill of indictment charging multiple violations of 18 U.S.C. § 843(b) is at loggerheads with the doctrine of due process as set out in 5th and 14th Amendments to the Constitution and notice requirement of the 6th Amendment.

Further, pursuant to an application of the guidelines, had the government charged each phone call as a separate count, the guideline for a phone count, U.S.S.G. § 2D1.6, refers back to the guideline for the underlying offense, § 2D1.1, which requires that the related offenses be grouped. In such a scenario, Mr. McGee's required sentence would be that for one violation of 21 U.S.C. § 843(b).

*Conclusion*

Mr. McGee's potential sentence for Count Three should be as it was described in the Presentence Investigation Report of February 26, 2001. A sentence beyond that range would be inappropriate for the reasons stated above. (Mr. McGee's Objections to PSI filed March 29, 2001.)

21. Defendant argues, and the United States agrees, that the Court of Appeals sustained these arguments made by Defendant at sentencing by the following language in its opinion:

With respect to his sentence, Mr. McGee was indicted and convicted under 21 U.S.C. § 843(b) of only one count of using a telephone to facilitate the commission of the Sec. 841(a)(1) felony.

\* \* \* \* \* \*

Mr. McGee argues, and the government agrees, that the maximum possible sentence on Count Three is eight (8) years because the indictment charged Mr. McGee with only one violation of § 843(b).

22. If the position advanced by Defendant and the United States is correct, the opinion of the Court of Appeals has established the law of the Tenth Circuit as follows: (i) with respect to a one-count indictment that refers to multiple violations of federal law, a defendant can only be sentenced for a single violation because a "count" in an indictment can, under no circumstances, result in more than a single violation; (ii) this is true even if evidence of multiple violations is adduced at trial

without objection, the question is posed to the jury on a verdict form without objection, and the jury returns a verdict of multiple violations without objection; and (iii) an indictment that includes a count of unlawful use of a telephone or other communication device, but that fails to identify the specific telephone call charged, does not give adequate notice of which telephone call forms the basis of the alleged violation at issue.

23. Contrary to the position advanced by Defendant and the United States, which each claims was upheld by the opinion of the Court of Appeals, this Court believes as follows:

i. Defendant was charged in the Indictment with making more than one telephone call over a period of two days in violation of 21 U.S.C. § 843(b).

ii. Defendant was on full and fair notice of defending against multiple telephone calls based on the clear language of the Indictment.

iii. The Indictment did not identify any single telephone call. Thus, the Defendant was not on notice of any particular telephone call in this case.

iv. The United States introduced evidence of multiple telephone calls at trial, without objection. *See* Exhibits 9, 10.

v. Among these telephone calls were seven (7) calls that were recorded by law enforcement officials between Defendant and the United States' primary witness, Ramona Hampton. These seven (7) calls were played for the jury on two tapes, Exhibits 9, 10. Each such a telephone call, standing alone, would support a separate violation of 21 U.S.C. § 843(b).

vi. The United States argued throughout trial that Defendant was responsible for multiple telephone calls in connection with this drug transaction.

vii. The United States never argued to the jury that Defendant was legally responsible for only a single telephone call.

viii. Neither Defendant nor the United States submitted a proposed jury instruction to the Court that would have required the jury to identify a single telephone call, and thereby make clear that all members of the jury must unanimously agree beyond a reasonable doubt on the same telephone call that formed the basis for a conviction under 21 U.S.C. § 843(b).

ix. The United States, after reviewing the Verdict Form, and stating for the record that it had no objection to that Verdict Form, argued in closing that the jury should give careful consideration to the multiple telephone calls in evidence, and in particular, the telephone calls on the tapes. The United States' closing argument never suggested that Defendant could be found guilty of only a single telephone call or that the jury should identify beyond a reasonable doubt the single specific telephone call that would form the basis for a conviction under 21 U.S.C. § 843(b).

x. The United States and Defendant each approved the Verdict Form without objection.

xi. By completing the Verdict Form, the jury returned a verdict of seven (7) separate violations of 21 U.S.C. § 843(b) beyond a reasonable doubt, which, under the statute, supports a sentence for eight (8) years for each such violation, for a total of 56 years. Thus, the sentence imposed by the Court in this case, based on the jury's

verdict for seven (7) separate violations of the statute, was authorized by law.

xii. The United States and Defendant communicated with each other prior to filing their respective briefs on this issue to the Tenth Circuit Court of Appeals, and thereafter engaged in concerted action with the intention of overturning the judge's sentence of 56 years for the seven (7) separate violations of 21 U.S.C. § 843(b).[9]

xiii. In furtherance of their mutual intention, the United States and Defendant selectively designated only portions of the record, in clear violation

9. At the hearing on October 4, the following two exchanges occurred:

THE COURT: Now, you confessed, you basically confessed this issue, right?

MR. RALEY: Basically, Your Honor.

THE COURT: Right. Did you communicate with Mr. McCormick before you filed your brief?

MR. RALEY: I'm sure I did.

THE COURT: He knew you were going to confess the issue?

MR. RALEY: I'm sure he did.

THE COURT: Did you tell him that?

MR. RALEY: Yes.

THE COURT: Okay, So he knew because—

MR. RALEY: Something, I don't know if I used the word "confess," but I—

THE COURT: Right.

THE COURT: —you told him before it went up on appeal you were going to confess the issue?

MR. RALEY: We discussed the matter regarding the PSI, the revised PSI, the argument at sentencing, and the sentencing transcript.

THE COURT: All right.

MR. RALEY: And he knew about those things and he knew the Government's position regarding the sentencing as to Count three. I don't know if we used the word "confess," but we discussed the matter.

THE COURT: You told him you weren't going to contest his appeal on Count three.

MR. RALEY: Right.

THE COURT: Before he filed his brief, right?

MR. RALEY: Yes.

THE COURT: Okay. Did you discuss what you were going to designate for the record?

MR. RALEY: Your Honor, I don't recall that we did that.

THE COURT: Was there any discussion about fairly presenting the sentencing judge's reasoning and the facts that gave rise to the sentence?

MR. RALEY: I don't believe we had any specific conversation regarding that. I just simply told him about the sentencing hearing transcript and the trial transcript.

THE COURT: Is it fair to say that your joint objective was to overturn that sentence.

MR. RALEY: Your Honor, that was the Government's position, that the sentence, as we argued prior to sentencing, that one count was all we intended and the eight years was the maximum that the Court could—

THE COURT: So you and Mr. McCormick jointly intended to overturn that sentence, right?

MR. RALEY: We intended to basically concede the sentence.

THE COURT: With the effect of overturning it, right? With the effect of overturning it, right? I mean, at the end he's seeking to overturn it and you've told him in advance you're going to concede it right.

MR. RALEY: Yes, Your Honor.

(10/04/02 Hr'g Tr. at 34:8 to 36:11.)

\* \* \* \* \* \*

THE COURT: Did you know in advance that they were going to confess the issue?

MR. McCORMICK: Yes, I had a good idea that they were going to do this, yes.

THE COURT: So you were free to say anything you wanted without contest, right?

MR. McCORMICK: No, I write my briefs according to my judgment and what I thought was an appropriate argument and a proper argument, which I did in this case.

THE COURT: And didn't reference in any shape, manner or form the argument that was made at sentencing?

MR. McCORMICK: In regard to the length of punishment that Mr. McGee received at sentence, yes, I did. That is the bottom line.

(10/04/02 Hr'g Tr. at 49:11–24.)

of the Tenth Circuit Rules, and submitted briefs which contain material omissions (*e.g.* appellant's failure to mention the jury's verdict beyond a reasonable doubt of seven (7) separate violations of 21 U.S.C. § 843(b)) and misrepresentations (*e.g.* appellee's representation that Count Three in some way specified a single violation of 21 U.S.C. § 843(b), coupled with appellee's deletion of the Indictment's references to telephone calls made over a period of two (2) days) about this issue. Appellant and Appellee were secure in the knowledge that such omissions and misrepresentations would not be challenged by the other side. As a result, the Court of Appeals was mislead about the substance of this issue.[10]

xiv. Having mislead the Court of Appeals regarding the substance of the issue, the United States and Defendant now claim that the Court of Appeals in fact decided this issue in Defendant's favor as presented by Defendant at sentencing

xv. If, and to the extent that, the opinion of the Court of Appeals, *arguendo*, decided the issue in the way the United States and Defendant claim, the Court respectfully disagrees.

24. If the jury returned a verdict of guilty for only a single violation of 21 U.S.C. § 843(b) under the opinion of the Court of Appeals in this case, as claimed by Defendant and the United States, such a verdict arguably is infirm. First, the Indictment provided no notice to Defendant of which telephone call was the basis for the charge. According to Defendant's argument at sentencing, and again at the October 4 hearing,[11] such a failure of notice is "at loggerheads with the doctrine of due process as set out in the 5th and 14th Amendments to the Constitution, and the

---

**10.** At the hearing on October 4, the following exchange occurred:

> THE COURT: All right. Now is there anywhere in your papers or what is in your papers that you would say reflects the issue that was before this Court at the time of sentencing?
> MR. RALEY: We filed a response to Mr. Schisler's objections to the Presentence Report.
> THE COURT: Right.
> MR. RALEY: And we concurred with Mr. Schisler. And I believe at sentencing we argued with Mr. Schisler those objections, and that was prior to the sentencing.
> THE COURT: Right. And is that what you argued on appeal, is that you can't get seven separate violations even though the jury came back, returned a verdict of seven specific violations of this statute beyond a reasonable doubt, is that what you argued to the Court of Appeals?
> MR. RALEY: *Your Honor. I believe that the argument may not have been brought up by the appellant in this case—*
> THE COURT: *Right.*
> MR. RALEY: *—and we don't have to argue it in response.*
> THE COURT: *Now, you confessed, you basically confessed this issue, right?*
> MR. RALEY: *Basically, Your Honor.*

(10/04/02 Hr'g Tr. at 33:13 to 34:10 (Emphasis added).)

**11.** At the hearing on October 4, the following exchange occurred:

> THE COURT: . . . You haven't found authority, have you, that supports your position with clarity of multiple violations. I understand your argument about your authorities, and that may be the case, and it may not be the case. It's an important issue. Ironically, it's an important issue for the United States. The United States does not want the outcome that they are arguing here today, when they find themselves in trial some day and they have evidence, and they want to be able to argue there wasn't any claim of duplicitousness of this Indictment and we went to the jury. I'm not sure the United States in a million years wants the outcome that from now on, under their argument, they have to say which call when, right?
> MR. NIGH: That's correct.
> THE COURT: In the Indictment, right?
> MR. NIGH: That's correct.
> THE COURT: Which call when, in the Indictment, right?
> MR. NIGH: That's correct.
> THE COURT: Otherwise, it's subject to a motion to dismiss, right?

notice requirement of the 6th Amendment." Second, the United States argued multiple telephone calls and never specified which telephone call was referenced in the charge. To the contrary, the United States argued throughout, and particularly in closing, that the jury should consider multiple telephone calls. Third, the jury was not instructed to identify a specific telephone call as forming the basis of a guilty verdict for a violation under 21 U.S.C. § 843(b).[12] Finally, in its brief to

MR. NIGH: Yes, or a Bill of Particulars Motion or something, certainly, that would require more definite and certainty in the charging document.

THE COURT: So if they don't say which call when it's to be dismissed, right, because it doesn't—because that's what they are arguing, it has to be that call in that indictment. So, hypothetically, it never happened before, the guy's girlfriend gets on the stand and says, you know, we talked about drugs in every other call, but it's funny about that call because we were talking about getting pizza. Right? That's an acquittal, right, on that call?

MR. NIGH: Under—

THE COURT: Under their argument.

MR. NIGH: Hypothetically, perhaps. And I'm not sure.

THE COURT: Well, I don't believe that the law requires that degree of specificity. That's the issue that was intended to be brought up. It wasn't intended to be brought up on the grounds that there was no objection. To the contrary, I accept and in looking back on the transcript it certainly appears to me that Mr. Schisler is preserving his objection as sentencing on this fundamental legal issue, you can't get more violations. Right? I'm not of a mind that he didn't preserve his objection in that regard. The only people who can't claim that they preserved an objection is the United States, right? No suggestion there that they had an objection to sending it back under those circumstances, right?

No, had everybody objected then, necessarily, wouldn't we have had to have an instruction that would require that the jury tell us exactly which call so that they all agreed on the same call?

MR. NIGH: Yes.

THE COURT: Right?

MR. NIGH: I believe that that is accurate.

THE COURT: So that's the only other alternative, right, of what we did in terms of making sure that we have one call. What happens when you put on seven calls?

Don't you have to say it wasn't the pizza call, right, it was one of the other calls, right?

MR. NIGH: You have to have something which requires unanimity.

THE COURT: Unanimity beyond a reasonable doubt which call, right? And therefore they have to be instructed on it, right?

MR. NIGH: I believe that to be correct.

THE COURT: Right. No such offer of any such instructions here, right?

MR. NIGH: That is correct.

(10/04/02 Hr'g Tr. at 54:14 to 57:5.)

12. At the hearing on October 4, the following exchange occurred:

THE COURT: Does everybody have to agree on a call, that there was a call for a drug count?

MR. RALEY: Yes, Your Honor, and I believe the jury—

THE COURT: And if one juror thinks that the call at 8:03 was a drug call but another one thinks the call at 10:15 was a drug call, can they convict or do they have to both agree they made, unanimously agree they made a drug call and they know which call it was?

MR. RALEY: They have to unanimously agree. And I believe the jury—

THE COURT: On a specific call, right?

MR. RALEY: In this case they found seven phone calls. Any of the seven would have satisfied the Indictment.

THE COURT: Okay. But you would agree that they have to all agree on the same call that it's a drug call, right?

MR. RALEY: Yes.

THE COURT: Okay. Did you propose any instructions to that effect.

MR. RALEY: I don't believe there were any instructions. I don't have the instructions in front of me.

THE COURT: Right. You never proposed an instruction that tried to delineate the phone call, right?

MR. RALEY: I don't believe there was one, Your Honor.

the Court of Appeals, Defendant did not present in any way the jury's verdict beyond a reasonable doubt of seven (7) separate violations of 21 U.S.C. § 843(b), and the United States presented this verdict only as "... asking the jurors to determine how many particular telephone calls were made." If, *arguendo*, counsel's presentations were accurate, then there was no unanimous finding by the jury with respect to a single specific telephone call that forms the basis for a guilty verdict under 21 U.S.C. § 843(b).

25. Defendant argues, and the United States agrees, that in light of the record of this case and the opinion of the Court of Appeals based on that record, the law of this circuit is as stated in Paragraph 22 above.

26. Assuming, *arguendo*, that the parties are correct, that the law of the Tenth Circuit is as stated in Paragraph 22 above, the United States is nevertheless not relieved of its responsibility to ensure that the jury determines beyond a reasonable doubt which of the multiple telephone calls formed the basis of a guilty verdict under 21 U.S.C. § 843(b). The parties agree that no such determination was made in this case.

27. The United States has represented that officials in the Department of Justice were apprised of the legal position advanced by the United States in this case.[13]

> THE COURT: Okay.
> MR. RALEY: But I believe the Judge—
> THE COURT: You presented—the Indictment doesn't specify one call. You put on evidence of seven calls. You argued to the jury in closing argument multiple calls. You never offered an instruction to delineate a single call, which would be consistent with what your present formulation of the issue is, and yet where was it that we were supposed to find that this was about one phone call?
> MR. RALEY: It would be our argument, Your Honor, that we intended one phone call. There was one count that was a phone count. Your Honor polled the jury they found unanimously as to Count three. And that was our understanding that we only intended one count.
> (10/04/02 Hr'g Tr. at 31:20 to 33:6.)

13. At the hearing on October 4, the following exchange occurred:
> THE COURT: Okay. Now, I understand that you have a process by which you gain appellate approval, is that right from main Justice?
> MR. RALEY: Yes, Your Honor.
> THE COURT: Okay.
> MR. RALEY: If we are to go up on an appeal.
> THE COURT: If you go up on appeal. And did you advise main Justice of this case?
> MR. RALEY: Your Honor, may I have a moment?
> THE COURT: Yes, go ahead.
> MR. RALEY: Your Honor, just to make it clear, if we are taking up an issue on appeal, then we inquire of main Justice whether we get permission. Not necessarily on every appeal do we get main Justice's approval. But if we, like had we decided to appeal the arresting of the judgment as to Count one, we would get Department of Justice approval to do that, but in this particular case regarding Count three we would not need any approval.
> THE COURT: Did you discuss Count three with main Justice?
> MR. RALEY: I believe we did, Your Honor.
> THE COURT: Okay. Did you tell them that the jury had returned a verdict beyond a reasonable doubt of seven separate violations of that statute?
> MR. RALEY: We informed them that the grand jury returned an indictment as to one count of a phone count that was alleged over a two-day period. The jury found seven violations as was found—as we presented evidence as to multiple phone calls. I know that I informed Mr. Friedman in Washington that we argued at sentencing that the maximum sentence would be eight years, and that the Court returned a sentence of 56 years.
> THE COURT: So you're saying that they were fully advised that the jury had returned—
> MR. RALEY: Findings of—
> THE COURT:—beyond a reasonable doubt—

Based on the above, the Court hereby orders the United States and Defendant to brief the following three issues: (1) whether the law of the Tenth Circuit is as stated in Paragraph 22 above; (2) if so, whether this Court should vacate the jury's verdict of guilty on Count Three because (i) the United States did not give adequate notice of the specific telephone call that formed the basis for the alleged violation of 21 U.S.C. § 843(b), and (ii) the jury did not unanimously identify beyond a reasonable doubt, pursuant to proper instructions, which specific telephone call formed the basis of the violation under 21 U.S.C. § 843(b); and (3) whether, in light of the misleading presentation of the issue to the Court of Appeals, and the potentially significant effect of that court's opinion, the integrity of the judicial process has been compromised such that a recall of the mandate in this case is appropriate. The parties are ordered to file simultaneous briefs on these three issues no later than November 12, 2002, and to file simultaneous response briefs no later than November 25, 2002.

Due to the potentially far-reaching impact of this issue on the United States throughout the Tenth Circuit, the Court orders that the United States' briefs be signed by an official of the Department of Justice in Washington, D.C. certifying that the views contained therein are those of the Attorney General of the United States.

The hearing currently set for October 25, 2002, is hereby stricken. This matter is hereby set for hearing on December 4, 2002, at 9:30 a.m.

IT IS SO ORDERED.

MR. RALEY: Finding of seven phone calls.
THE COURT:—a verdict of seven violations of this statute?

## APPENDIX 1

(to Order of October 22, 2002)

### SECOND SUPPLEMENTAL JOINT STATEMENT OF THE CASE

COME NOW the parties, in response to this Court's order of October 4, 2002 and submit the following:

1. On or about August 8, 2000 the U.S. Attorney's Office submitted to the Court Clerk a criminal cover sheet in accordance with Title 18 U.S.C. § 3170, naming Malcom McGee as defendant. In the offense charged section of the form the government stated the date of the offense for Count 3 was "on July 14 and 15, 2000". The government stated the penalty for Count 3 was "not more than ten years imprisonment and a $30,000 fine." In the special monetary assessment section the government indicated the amount was "$100.00 each count".

2. On August 8, 2000, the Grand Jury in and for the Northern District of Oklahoma returned a three (3) count Indictment against Mr. McGee, alleging in Count 1; Title 21, United States Code, Section 846, Conspiracy to Possess one kilogram or more of a mixture or substance containing a detectable amount of Phencyclidine (PCP) with the intent to distribute; Count 2, Title 21, United States Code, Section 841(a)(1). Possession with Intent to Distribute a Controlled Substance with the Intent to Distribute; Causing a Criminal Act under Title 18, United States Code, Section 2(b); and Count 3, Title 21, United States Code, Section 843(b), Use of a communication Facility for distribution of Controlled Substances. The body of the indictment, alleged in pertinent part:

MR. RALEY: I believe I discussed the fact that they returned a verdict of finding of multiple phone calls.
(10/04/02 Hr'g Tr. at 36:12 to 38:2.)

## COUNT I

### [21 U.S.C. § 846]

Beginning in or around July, 2000, the exact date being unknown to the Grand Jury, and continuing until July 15, 2000, in the Northern District of Oklahoma, and elsewhere, MALCOM DEROME McGEE, aka "Malik", aka "Mike McGee", defendant herein, did knowingly and intentionally conspire, confederate and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of Title 21, United States Code, Section 846, as follows:

. . . .

2. To use interstate communication facilities, that is a telephone, in committing and/or causing, or facilitating the commission of acts constituting a felony under Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 843(b).

### MEANS AND METHODS OF THE CONSPIRACY

The objects of the conspiracy would be accomplished and were accomplished as follows:

3. The Defendant MALCOM McGEE, and others known and unknown to the Grand Jury, would and did utilize telephones (cellular and otherwise), and paging devices, in order to communicate with others regarding the possession and delivery of the Phencyclidine (PCP).

### OVERT ACTS

To effect the objects of the conspiracy, the defendant and other co-conspirators committed various overt acts within the Northern District of Oklahoma and elsewhere, among which were the following:

10. Between on or about July 14 and 15, 2000, the courier placed a series of telephone calls from Tulsa, Oklahoma to MALCOM McGEE, the defendant herein, via cellular telephone number and pager number that McGEE had provided. MALCOM McGEE, the defendant herein, also placed a series of telephone calls to the courier while located in Tulsa, Oklahoma, within the Northern District of Oklahoma. The purpose of the telephone calls was to discuss the possession and delivery of the Phencyclidine (PCP). During these calls, the need for money by the courier was discussed. It was further discussed that MALCOM McGEE, the defendant herein, would be traveling to Tulsa. Oklahoma to take possession and delivery of the 2000 milliliters of Phencyclidine (PCP).

### COUNT THREE

### [21 U.S.C. § 843(b) ]

On July 14 and 15, 2000, in the Northern District of Oklahoma, MALCOM McGEE, defendant herein, did knowingly, intentionally, and unlawfully use a communication facility, that is a telephone, in committing, causing, and facilitating the commission of an act constituting a felony under Title 21, United States Code, Section 841(a)(1), in that the defendant used the telephone to discuss various matters concerning the possession with intent to distribute and the distribution of phencyclidine (PCP), a Schedule III Controlled Substance. All in violation of Title 21, United States Code, Section 843(b).

3. On October 30, 2000, Jury Trial commenced and on November 1, 2000 the Jury returned a verdict of Guilty as to all three counts. Trial Counsel and the Dis-

trict Court discussed matters relating to the Instructions and Verdict Form for Count 3 prior to the time the case was submitted to the jury:

The Court: Please be seated. All right. We have the copies of the instructions. And after we break up, before we send back all of the exhibits, if you-all could approach with Ms. Holland and determine with certainty that we have the exhibits that you want to send back.

Also, let's talk about the verdict form if we could. Ms. Murdy, do you have the verdict copy, current draft of the verdict form, please?

All right. Mr. Schisler, you are recognized, sir.

MR. SCHISLER: Your Honor, I don't know if the sort of special interrogatory here on the bottom of Count three asking the jury to find the number of phone calls is appropriate. The statute does talk about each individual phone call or communication can be charged as a separate offense, but I think we're limited to the count as it was charged. You could possibly infer that there were—I mean, it's Count Number three involving use of a telecommunication device over a period of two days.

THE COURT: But how does that affect punishment that's what—actually this is being driven by the presentation by Mr. Snoke this morning and it caused us to begin some further consideration as to whether—is it not in the statute that it provides that there can be additional punishment enhancements for each number?

Mr. SCHISLER: Your Honor, the way the statute reads, I think the critical language is each separate use of a

communication facility shall be a separate offense under this subsection.

THE COURT: Okay.

MR. SCHISLER: That doesn't, in my mind, does not mandate a finding by the jury of how many phone calls were made. I think that was a charging decision that the Government could have, if they'd wanted to break it down into five separate charges, each involving a separate felony conviction possibly, and a separate $100 special monetary assessment, they could have done it. But they charged it in one count.

THE COURT: Well, let the ask you this. If you had, let's say pre-*Apprendi*, if there was a determination thereafter that there were, I mean, clearly even established by the transcripts themselves, if the Court had made some determination that there were five calls say, just to make the math easier, we won't get up to 11 million. But if you had five calls under pre-*Apprendi*, does that mean that we could give 20 years imprisonment?

MR. SCHISLER: Your Honor, I think that it goes back to, I mean, I don't know if the number of—*Apprendi* would have to—if the number of calls was found to raise the punishment level above the statutory maximum sentence, if the number of calls were able to do that, then you would have an *Apprendi* issue, and I think that based on when we get down to sentencing, should there be a conviction on that, we'd be taking about a statutory maximum of eight years and a fine of $60,000 because of a prior conviction, rather than 4 and 30.

THE COURT: Per offense, right?

MR. SCHISLER: Well, I don't know, Your Honor. I think that that just, I

think the way the statute reads, that's just—that's an instruction in terms of how it's to be charged. In other words, they are saying you cannot—

THE COURT: So you're saying, if I understand you correctly, is that the indictment should have read that on or about July 14th, he picked up the phone and made a call in furtherance of a drug conspiracy under 843?

MR. SCHISLER: And later that day made another call.

THE COURT: And then later, also on the same day he made a second call.

MR. SCHISLER: As a separate count.

THE COURT: As a separate count?

MR. SCHISLER: Yes.

THE COURT: And suppose, hypothetically, they had done that, and we are where we are, and we were going only by transcript say, I mean again, hypothetically. And suppose—

MR. SCHISLER: Multiple convictions were had.

THE COURT: Right. Then what?

MR. SCHISLER: Then I've identified—

THE COURT: Is that five separate, eight year sentences?

MR. SCHISLER: I think that would have to be—I think we would have to then go to the guidelines and determine whether or not these offenses group for purposes of punishment and whether or not they are mandated to run consecutively or concurrently in terms of punishment. If you got five, eight year sentences and they all can concurrently you essentially have one—

THE COURT: But if it's a freestanding stand-alone call; right?

MR. SCHISLER: Right.

THE COURT: I mean, does that group it with a free standing stand-alone call?

MR. SCHISLER: Well, there are offenses, Your Honor, say for example in the case of possession of child pornography, if you've got several individual counts dealing with possession of child pornography—I may not have the, I may be using a bad example, but for purposes of punishment those would all group together, glom into essentially for purposes of punishment, other than the special monetary assessment—

THE COURT: But let's suppose they don't group them. Can I hold him—

MR. SCHISLER: If they don't—

THE COURT: If there is, hypothetically, a guilty verdict here and there were no grouping.

MR. SCHISLER: Then you would have to go to 3D1.1 which is the section in the guidelines that deals with the grouping rules and you would determine each count, the offense level on each count and then determine whether, based on specific offense characteristics, how far apart each individual count was for each other in terms of special offense characteristics—

THE COURT: But my point—

MR. SCHISLER: —and then the units would be assigned and then you would get an additional—

THE COURT: Right, but my point would be, you're talking about a whole mess of judge stuff, right?

MR. SCHISLER: Well, I'm talking about under the sense of—

THE COURT: I mean, the ink is not even dry on your *Apprendi* brief on your way to Denver, right? You're not going to believe what he did down

there, right? He made up all of these calls, right?

MR. SCHISLER: I'm not saying, Your Honor, that there weren't, there's not evidence in the, you know, there's not evidence presented that there was more than one phone call.

THE COURT: No, I understand that. But I'm just saying that if we're going—if there's a possibility that exists that he would be sentenced for more than one call separately and distinct form the others, that is in a non-grouped nonconcurrent way. I don't know that it is or isn't—

MR. SCHISLER: Right.

THE COURT: —but sitting here, if there is that possibility, isn't it compelled by *Apprendi* at least that I can't make that finding, that has to be done beyond a reasonable doubt?

MR. SCHISLER: I would like to do a little research on this. I think that *Apprendi* requires—

THE COURT: You're saying he gets the eight, the jury gives him the first eight years but I get to start—I get the next 40 years.

MR. SCHISLER: I'm not certain about that. I'm not sure that *Apprendi*—I don't think *Apprendi* applies.

THE COURT: I'm in the group that doesn't think the reach of *Apprendi* is quite as significant as people do, but I do know this: If they get the first eight years, that doesn't give me the next 40 years up year here. Right?

MR. SCHISLER: I think that this is—for lack of a better term, this may be quast *Apprendi*. I'm not sure *Apprendi* applies here because—first of all, I haven't really thought about it.

THE COURT: Well, let me ask you this. Let me do it the other direction because I took very seriously what Mr. Snoke said and how it might relate to where we were, and you can advise him he can hill for this morning here based on this colloquy but—

MR. SCHISLER: In regard to his reference to a special finding on the what the object of the conspiracy is—

THE COURT: Right. I mean, he was talking about the notion that we were dealing with the communication facilities and so forth, but it certainly caused us to reconsider where we were as far as the communication facility issue, because that raised the point that there are separate sentencing capabilities for each call and there's something about each call.

Let me ask you this: What problem does this occasion? I mean, it seems to me that we can, if there is, hypothetically, a guilty verdict entered—

MR. SCHISLER: I would—

THE COURT: We can raise this question, you can say, well, this was all very interesting but irrelevant because of grouping, because of concurrent sentences and so forth later on down the line—

MR. SCHISLER: I think now that it's kind of—a light has kind on gone in my head. I wouldn't, I don't think it would harm anything, and I certainly, based on my argument here, wouldn't—I'm not trying to set up an *Apprendi* issue.

THE COURT: No, I understand you're not—

MR. SCHISLER: I'm not that sharp.

THE COURT: I think as among the three of us, which I always try to explain to appellate judges, that we work in panels as well, but it just happens that only one is a judge and the other two are the lawyers for the competing parties, but this panel of

three, we're all trying to navigate our way—

MR. RALEY: Through it.

THE COURT: through Apprendi and make sure that we have at least settled on the law and nobody's trying to sandbag anybody. That's why I'm just—

MR. SCHISLER: And I could anticipate a scenario where an attorney would come in and say, well, there was not a finding by the jury of how many phone calls were made, therefore you've got of consider it as one phone call and—

THE COURT: But if you reach that at sentencing, if we end up at sentencing here and it turns out that these are not grouped and it turns out that this is the only guilty count that there is reached in this case, and there is several calls and the United States argues they shouldn't be grouped and they shouldn't be concurrent and they should be free stand alone, the logical response is wait a minute, they found one, we'll give you the eight years, but we're not taken taking the other 40, that's judge made 40. Right?

MR. SCHISLER: Right.

THE COURT: And that's the reason, that's what caused us to rethink it and to see whether or not there's something could be done right now so at least then there wouldn't be any question—

MR. SCHISLER: It would eliminate—

THE COURT: —either of substance or of finding beyond a reasonable doubt by a jury. That's the only reason for raising it.

MR. SCHISLER: Based on that, I don't have any objection to it.

THE COURT: All right. So is this satisfactory then?

MR. RALEY: Yes, Your Honor.

THE COURT: Okay. Is that without objection?

MR. SCHISLER: Yes.

THE COURT: Then we will enter that verdict form. Without objection, Mr. Raley, this verdict form?

MR. RALEY: Yes, Your Honor. Thank you.

THE COURT: All right. We'll use the verdict form. All right. And we have the instructions and we have, you-all have gone over the exhibits already or are you going to go over those?

(Tr. Vol. III, pp. 323—331).

4. The verdict form returned by the jury as to Count 3 was as follows:

### COUNT THREE

Use of an interstate communication facility in committing, causing or facilitating a violation of Sections 841(a)(1) and 841(b)(1)(A)(iv) of Title 21 of the United States Code:

Not Guilty _____ Guilty ___X___

If you found the Defendant "Guilty" on this Count Three, please enter the number of telephone calls you have determined beyond a reasonable doubt that were made in violation of Section 843(b) of Title 21 (use of an interstate communication facility) for the purpose of committing, causing or facilitating violation of Sections 841(a)(1) and 841(b)(1)(A)(iv) of Title 21.

Number ___7___

5. On February 2, 2001, the original Presentence Investigation Report (PSI) was prepared by the Probation Office, establishing a sentencing range as follows:

On Count Three, 8 years (based upon his prior felony drug convictions which

doubles the maximum punishment from 4 years to 8 years). (Original Presentence Report).

6. On March 1, 2001, the Court entered an Order that stated in its entirety as follows:

The Court hereby continues the sentencing of Defendant Malcom McGee scheduled for March 2, 2001. Sentencing is reset for April 5, 2001 at 9:30 a.m.

Sentencing is continued to allow time for the appropriate amendments to be made to Defendant's Pre-sentence Report, and, if necessary, the filing of objections to the amended Pre-sentence report. The amendments to the Pre-sentence Report shall consist of: (1) the effect of the Court's arrest of judgment on Count One, entered this date; (2) a computation of the appropriate sentence under Count Three for each of the seven (7) offenses defined in 21 U.S.C. § 843, as found by the jury and noted on the Verdict Form; (3) a notation of the Court's ability to require consecutive sentences for each of the seven (7) offenses under 21 U.S.C. § 843, each of those sentences to run concurrently with the sentence at Count Two, pursuant to U.S. Sentencing Guidelines Manual § 5G1.2; and (4) an increase in the Special Assessment fee to reflect that Defendant was found guilty of a total of eight (8) offenses against the United States.

7. The Court's March 1, 2001 order was not designated by either party as part of the record for the Court of Appeals.

8. On March 1, 2001, a Revised PSI was prepared by the Probation Office establishing a Sentencing Range as follows: Count One, "arrested" and not addressed in PSI; Count Two, Mandatory Life; Count Three, a total of 56 years. (Revised PSI dated March 1, 2001).

9. On March 29, 2001, Mr. McGee, through Mr. Schisler, filed Objections to the revised PSI, specifically objecting to the Probation Office's calculation of the sentencing options for Count Three:

Mr. McGee also objects to probation officer's calculations in regards to sentencing options for Count Three, as stated in paragraphs 48, 49, 51, 52, 55 and 56. In these paragraphs, the probation officer contends that Count Three consists of seven separate offenses, each of which carries its own set of punishments—prison time, supervised release, Special Monetary Assessments and fines. It is counsel's understanding that this calculation is reflective of the information provided to the parties in the Court's order (filed and entered March 1, 2001; Document # 40).

While counsel would agree that 21 U.S.C. § 843 states "...each separate use of a communication facility shall be a separate offense under this subsection...", this statutory language does not compel a finding of seven separate felony convictions. The language simply provides the prosecuting authority the option of filing seven separate charges. The language of Count Three, even read in conjunction with 18 U.S.C. § 843(b), gives the defendant no notice of the possibility of seven separate convictions springing from this single count. It merely advises the defendant that the prosecutor could have filed a separate charge for each provable use of a telephone, but chose instead to file a single count.

The fact that the jury found seven separate incidents of use of a telecommunications facility is also not compelling on this issue. The notion that a special verdict form could substitute for

the notice provided by a true bill of indictment charging multiple violations of 18 U.S.C. § 843(b) is at loggerheads with the doctrine of due process as set out in 5th and 14th Amendments to the Constitution and notice requirement of the 6th Amendment.

Further, pursuant to an application of the guidelines, had the government charged each phone call as a separate count, the guideline for a phone count, U.S.S.G. § 2D1.6, refers back to the guideline for the underlying offense, § 2D1.1, which requires that related offenses be grouped. In such a scenario, Mr. McGee's required sentence would be that for one violation of 21 U.S.C. § 843(b).

### *Conclusion*

Mr. McGee's potential sentence for Count Three should be as it was described in the Presentence Investigation Report of February 26, 2001. A sentence beyond that range would be inappropriate for the reasons stated above. (Mr. McGee's Objections to PSI filed March 29, 2001).

10. On April 2, 2002, the government filed its Response to Mr. McGee's Objections to the Revised PSI. In the government's Response to Mr. McGee's Objections to the revised PSI, the government stated:

2. However, pursuant to Court Order, the February 26, 2001 Presentence Investigative Report was revised on March 1, 2001; specifically providing in paragraphs; 48, 49, 51, 52, 55 and 56, for increased penalties for Count Three of the Indictment, a single allegation of a Title 21 U.S.C. § 843(b) offense. The government only alleged a single violation of Title 21, U.S.C. § 843(b) in Count Three of the Indictment, which would carry a maximum sentence of eight (8) years and a special assessment of $100.00, as set forth in paragraph 48 of the February 26, 2001, Presentence Investigation Report.

3. In response to defendant's objections filed March 29, 2001, regarding the Presentence Investigative Report as revised March 1, 2001, the government would concur and join in objection to paragraphs 48, 49, 51, 52, 55 and 56, in reference to the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

11. On April 5, 2001, a sentencing Hearing was held before the District Court regarding the issue related to Count 3:

THE COURT: All right. We're here to impose sentence in this matter but before we proceed to that there are certain preliminary motions dealing with the Presentence Investigation Report. On behalf of the United States, Mr. Raley, how best we proceed in your judgment, sir?

MR. RALEY: That's correct, Your Honor, there are a couple of objections. I believe Mr. Schisler filed some objections and I responded to his objections, specifically with reference to Count three, Your Honor. And in my responses also, Your Honor, I reference a motion to reconsider the Court's previous order arresting the judgment as to Count one of the indictment. And I don't know what—

THE COURT: Shall we start with the Count three issue or where do you want to start?

MR. RALEY: That would be fine, Your Honor. And in that regard, the Government has stated in its response to the defendant's objections to the PSI, stated basically that we concur with the allegations—I'm sorry, Your Honor, we concur with the defendant's objection

that the Government charged one count of an 843(b), Title 21 using the communication facility in carrying out a drug-related crime. It would be our—

THE COURT: You mean the indictment included those words once.

MR. RALEY: Pardon me, Your Honor?

THE COURT: The indictment included those words once, right?

MR. RALEY: I believe so. I would have to find the indictment to get the specific language of Count three.

THE COURT: But it's not—well, why don't we—this is Mr. Schisler's motion, why don't we hear from him first.

Mr. SCHISLER: Your Honor, what I'm making reference to here is a pleading that was first filed on March 29th, Objections to Revised Presentence Investigative Report.

THE COURT: Right.

MR. SCHISLER: In that objection we realleged objections made to the original PSI which were not changed in our original objections.

THE COURT: Right.

MR. SCHISLER: Just so that they would stay on the record. The new objection does involve the issue surrounding Count three which is 21, 843, the phone counts.

THE COURT: Right. What is the nature of that objection?

MR. SCHISLER: Your Honor, the revised PSI in its sentencing section, potential sentence stated that Count three should be treated as if it was seven individual counts of conviction of 21, 843 as opposed to one individual count of conviction.

THE COURT: And this is news by virtue of the fact that you've just read the verdict form?

MR. SCHISLER: No, Your Honor. I think the verdict form, which I don't have in—

THE COURT: Specifically asks how many counts, right?

MR. SCHISLER: I thinks it's—

THE COURT: Beyond a reasonable doubt, right?

MR. SCHISLER: Not right, Your Honor. I don't have it in front of me, but I think that the verdict form asks for findings on how many particular phone calls were made.

THE COURT: Beyond a reasonable doubt, right?

MR. SCHISLER: I believe that's true, Your Honor.

THE COURT: All right.

MR. SCHISLER: Okay. But I don't believe—

THE COURT: Why were we asking that? It beats the heck out of you?

MR. SCHISLER: Well, Your Honor, I think that it probably has something to do with the language in the statute.

THE COURT: Right.

MR. SCHISLER: And I certainly agree that 843 says in the statute each separate use of a communication facility.

THE COURT: So we asked them how many each separate uses there were beyond a reasonable doubt, right?

MR. SCHISLER: That's correct, Your Honor.

THE COURT: In other words, how many violations of this statute, right?

MR. SCHISLER: No, Your Honor, I think that the question—that may have been the Court's intent as far as the questioning but—

THE COURT: Well, what possible other remote intent would there be Mr. Schisler? I mean we sat here and went over the verdict form at great length,

both parties. What other ideas might we have had in mind other than that obvious one?

MR. SCHISLER: Well, Your Honor, I don't know what other ideas may have been in mind, but I know that the indictment charges one count. That's why we have Count one, Count two, Count three rather than four, five, six, seven, eight.

THE COURT: So this is purely a duplicity, duplicity in the indictment issue?

MR. SCHISLER: I don't understand the question, Your Honor.

THE COURT: So this is a motion saying that there's inadequate notice in the indictment?

MR. SCHISLER: Your Honor, essentially that's correct. We have a three-count indictment. A reading of the statute itself does not put any anyone on notice that a three-count indictment would be treated, at the conclusion of a jury trial, as a nine count indictment.

THE COURT: Was there an objection to the verdict form?

MR. SCHISLER: No, Your Honor.

THE COURT: All right.

MR. SCHISLER: Not that I recall.

THE COURT: Is it settled law in this circuit that a challenge to the indictment based on duplicity must be raised prior to trial? This is *Trammell.*

MR. SCHISLER: Your Honor we did not raise—

THE COURT: You can't be not on notice of something if you had a trial about it and you went to verdict and jury came back then you weren't on notice that you were going to have specific multiple counts charged in the indictment by virtue of a verdict form?

MR. SCHISLER: Your Honor, my position is that the language of 21, 843

gives of the prosecutor the discretion to file multiple counts based on each individual use of a communication facility that is used to facilitate the commission of a drug offense. My position is that that language gives the prosecutor discretion to file as many counts as he has phone calls. And in this case the prosecutor exercised his discretion by filing one individual count in violation of 21, 843, and that that's all that Mr. McGee can be sentenced on based on that fact.

THE COURT: Right. But your claim is that this is a duplicitous indictment, that there are two or more charges in the single count. And the Tenth Circuit has stated in *United States v. Trammell,* 133 F.3d, 1343 specifically that after trial is too late for that claim. You can't claim you're not on notice before a trial if you've had a trial. Furthermore, the kinds of concerns that are at issue here, that is the concerns about—the concerns about whether you have had notice and opportunity to defend, clearly it was put before the jury for each and every count because that's what the statute says, right?

MR. SCHISLER: Your Honor, we're not arguing—

THE COURT: And they came back beyond a reasonable doubt with each one, right?

MR. SCHISLER: We're not arguing, Your Honor, that the indictment is duplicitous, if you mean by that, charging more than one count within one count. I don't want to make—

THE COURT: Well, it did.

MR. SCHISLER: We're not arguing that that's what's being done here, because we feel, based on when I review the indictment, I see it as charging one count. That's why it's called Count three. And—

THE COURT: But we went to the jury with however many counts they found by a reasonable doubt without objection.

MR. SCHISLER: But the amount of counts that the jury found is not the controlling issue. The issue is what Mr. McGee—

THE COURT: If they had said not guilty it would have been controlling.

MR. SCHISLER: Well, if they said not guilty to Count three, which would have been nice, it certainly would have been controlling.

THE COURT: How many violations of that statute did the jury find beyond a reasonable doubt?

MR. SCHISLER: I would have to look at the verdict form to give you a correct answer on that. I remember that they found that there were seven separate telephone calls pursuant to the special verdict form that dealt with the seven individual counts.

THE COURT: Well—

MR. SCHISLER: But I wouldn't be able to answer that question without reviewing the document.

THE COURT: Well, we gave clear instructions, we gave a verdict form and there was no objections thereto, there was no objections to the indictment even raised a that point that in some way there was some failure of notice, notwithstanding the requirement of *Trammell* that it need be before trial. So the entire exercise, the entire exercise, as the colloquy for the record made clear, was as an *Apprendi* issue, that we have to make clear that they agree beyond a reasonable doubt for each and every phone call and, therefore, they need to make some determination which is why

we asked the question. Without objection, right?

MR. SCHISLER: Your Honor, for purposes of *Apprendi*, I think that a lot of modifications to jury instructions are being made across the country in order to avoid possible *Apprendi* problems, And I took that as a situation where overcautiousness in having the jury make a specific finding as to specific facts that were presented to it, there was no harm in allowing the jury to make a finding. I don't remember that the jury verdict listed each of those phone counts for the jury as individual counts, renaming, renumbering the indictment Count one, Count two, Count—

THE COURT: Let me read to you the verdict form.

MR. SCHISLER: Okay.

THE COURT: "If you found the defendant guilty on this Count three"— this is after a guilty not guilty determination—"please enter the number of phone calls you have determined beyond a reasonable doubt that were made in violation of Section 843(b) of Title 21, use of an interstate communication facility, for the purpose of committing, causing or facilitating a violation a violation of Sections 841(a)(1) and 841(b)(1)(A)(iv) of Title 21." That is the substantive drug crime with which the defendant was charged.

In other words, how many violations of this substantive law have you found beyond a reasonable doubt based on the evidence in this case? Answer seven, right?

MR. SCHISLER: And I would go back to how many charges were field against Mr. McGee, and the answer to my would be in my opinion, in reference 843, one. If the jury found that Mr. McGee was guilty there other offenses—

THE COURT: *Trammell* has long since told us that the time to raise that issue is not after trial. But any of the policy concerns have been more than amply met by virtue of the fact that we went to the jury with this question and they came back with a specific seven counts beyond a reasonable doubt.

MR. SCHISLER: My position on that would be that the jury was asked a question that need not be asked. The fact that it was asked and answered—

THE COURT: And there was a time to raise that issue.

MR. SCHISLER: I'm not going to be able to respond to the Court's questioning on timing. I need to go back and look at the timing on that. But the basis of my argument is for all intents and purposes the people dealing the parties, Mr. McGee viewed Count three as a single count. Had I gone to—had I advised Mr. McGee as to his possible sentence, and I may be falling on the sword here, but that's what I plan to do if I need to down the line—had I advised Mr. McGee of what the maximum possible sentence on Count three was, I would have told him based on his priors that the maximum normally is four, but in his case would be eight years because he's charged with a single count, Count Number 3, violation of 21, 843, and I would have told him he was subject to one single $250,000 fine or both. If that was wrong, that's what I would have told him. I might rethink that position in the future. But my understanding going into the case, reviewing the indictment, all the way through the end, all the way up to this point, and perhaps beyond, was that he was charged with Count one, Count two and Count three, looking at life sentences on one and two and looking at an eight year sentence on Count three.

THE COURT: All right.

MR. SCHISLER: All that's still my position.

THE COURT: No, I understand that.

MR. SCHISLER: Despite what was given to the jury and what the jury returned,

THE COURT: Right. I understand your argument. I don't find it persuasive. As I say, in the first instance any question in that regard that would be raised is untimely under *United States v. Trammell,* but furthermore, and even more importantly, it became clear over the course of the trial that what was going to the jury was multiple violations, and the jury came back beyond a reasonable doubt with seven specific violations of that statute under the evidence in this case, and the Court intends to sentence accordingly, therefore, the motion will be denied. Any further record on that, sir, that you want to make?

MR. SCHISLER: I would like to state that it's my understanding that the Government, the prosecuting authority in regards to this case, agrees that the sentence described in the February 26th PSI, which treated Count three as a single count, is the appropriate sentence to hand down in reference to the case today. In other words, the Government is in agreement with my position.

THE COURT: Right. The Government doesn't object to your motion, right?

MR. SCHISLER: Or even beyond that, is in agreement with it, I would think. I'm not sure that I'm—I'm not trying to put words into anybody's mouth.

THE COURT: Yes, I mean, I don't want to dilute what they were saying, but they were here for the verdict form

too. Did they object to the verdict form, sir?

MR. SCHISLER: I don't—I doubt that they did. I don't remember. One thing I would like to do is for the record—

THE COURT: All right.

MR. SCHISLER: —read the text of Count three of the indictment.

THE COURT: All right, go ahead.

MR. SCHISLER: "Count three, 21 U.S.C., 843(b). On July 14 and 15, 2000, in the Northern District of Oklahoma, Malcom McGee, defendant herein, did knowingly, intentionally and unlawfully use a communication facility, that is a telephone, in committing, causing, and facilitating the commission of an act constituting a felony under Title 21, United States Code, Section 841(a)(1), in that the defendant used a telephone to discuss various matters concerning the possession with intent to distribute and the distribution of PCP, phencyclidine"—I believe is the way its pronounced. Let me go back—I broke out of my—that's not a quote. Going back to the indictment. "In that the defendant used the telephone to discuss various matters concerning the possession with intent to distribute and the distribution of Phencyclidine (PCP), a Schedule III Controlled Substance. All in violation 21, United States Code, Section 843(b). A true bill," et cetera.

THE COURT: All right.

MR. SCHISLER: It does not allege specific phone calls. It merely talks about using a telephone to facilitate the commission of a drug offense and there is no reference to seven separate phone calls in the indictment. That's all I wanted to do with that.

THE COURT: All right. The record so reflects. Any further record on that issue, sir, Mr. Schisler?

MR. SCHISLER: No, Your Honor.

THE COURT: All right. That motion is denied.

Mr. Raley, you have a motion as well, sir.

MR. RALEY: Yes, Your Honor.

THE COURT: All right. You are recognized in support of the motion.

MR. RALEY: Your Honor, if I may before I address the Court with the next motion, just for purposes of the record with regard to the Count three issue, if I might have a brief comment. That the Government would concur with the defendant's argument regarding how the indictment was charged. And for purposes of the Apprendi issue. I believe as an exercise of caution, we did submit that particular verdict form to the jury and they did come back with a finding of seven particular phone calls, but it would be our agreement that we did charge a one count 843 and not the seven particular offenses. And I would like to make that record.

With regard to the other motion, Your Honor, I believe there are two motions. I filed early on a motion—

THE COURT: Would you find yourself in disagreement with the idea that the jury found beyond a reasonable doubt that there were seven separate violations of that statute?

MR. RALEY: No, Your Honor.

THE COURT: That's what they found; right?

MR. RALEY: Yes, Your Honor.

THE COURT: All right. And they found it under Count three, right.

MR. RALEY: Yes, Your Honor.

THE COURT: All right.

(Transcript of April 5, 2001 sentencing hearing, pp. 1–15).

The Court imposed sentence as follows:

THE COURT: All right. It's the judgment of the Court that the defendant Malcom Derome McGee is hereby committed to custody of the Bureau of Prisons to be imprisoned as to Count two for a term of life; as to Count three, a term of eight years is imposed for each of the seven offenses. The terms shall run consecutively for a total of 56 years. Counts two and three shall run concurrently with each other. Sentence is imposed because Count two involves a conviction under 21 U.S.C., Section 841(a)(1) and 841(b)(1)(A) and a sentencing enhancement of 21 U.S.C. section 851(a)(1), which requires a mandatory life sentence be imposed.

(*Id.* p. 26).

12. The Judgment was filed on April 19, 2001 and provided in relevant part:

. . .

THE DEFENDANT:

Was found guilty by jury trial on Counts One, Two, and Three of the Indictment on November 1, 2000, after a plea of not guilty, However, on March 3, 2001, the Court filed an Order to Arrest Judgment as to Count One of the Indictment.

Accordingly, the defendant is adjudged guilty of such counts, involving the following offenses:

| Title and Section | Nature of Offense | Date Offense Concluded | Counts |
|---|---|---|---|
| . . . . | | | |
| 21 USC 843(b) | Use of a Communication Facility for Distribution of A Controlled Substance | 07-15-00 | 3 |

As pronounced on April 5, 2001, the defendant is sentenced as provided in pages 2 through 5 of this judgment.

The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

. . .

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of life as to Count Two. As to Count Three, a term of eight (8) years is imposed as to each of the seven (7) offenses; the terms shall run consecutively, for a total of fifty-six (56) years. Counts Two and Three shall run concurrently with each other.

. . .

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of ten years Count Two and three years Count Three, to run concurrently with each other.

. . .

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties: payments shall be applied in the following order: (1) assessment; (2) restitution; (3) cost of prosecution; (5) interest; (6) penalties.

| ASSESSMENT | RESTITUTION | FINE |
|---|---|---|
| $200.00 | $0.00 | $0.00 |

### ASSESSMENT

It is ordered that the defendant shall pay to the United States a special assessment of $200.00 for Counts Two and Three of the Indictment, which shall be due immediately.

. . .

Guideline Range Determined by the Court:

. . .

Supervised Release

| | | |
|---|---|---|
| Range: | 10 years | Count 2 |
| | 2 to 3 years | Count 3 |
| Fine Range: | $20,000 to $8,000,000 | Count 2 |
| | $20,000 to 200,000 | Count 3 |

. . .

(Judgment filed April 19, 2001).

13. Mr. McGee filed Notice of Intent to Appeal and the Designation of Record was completed and filed with the District Court on May 7, 2001. Mr. McGee designated the District Court docket Sheet, Presentence Report, Transcript of the Jury Trial 10–30–00 through 11–1–00 (in its entirety), and the Transcript of Sentencing Hearing held on April 5, 2001.

14. On September 4, 2001, Appellant's Opening Brief was filed in the Tenth Circuit Court of Appeals. In reference to Count 3 the brief argued:

## II. THE SENTENCE IMPOSED UNDER COUNT 3 WAS ILLEGAL

### A. Standard of Review.

An appellate court views the legality of a sentence de novo. *United States v. Dunn*, 946 F.2d 615 (9th Cir.1991).

### B. Discussion

This issue was raised at sentencing when the defendant objected to the imposition of a sentence higher than the statutory maximum. Said objection was overruled. *Sent. Tr. 2–16.*

The defendant was convicted under Count 3 of the indictment for using a communication facility to facilitate the commission of a felony, in violation of 21 U.S.C. § 843(b). Since the defendant had one or more prior convictions, his punishment could be not more than 8 years pursuant to 21 U.S.C. § 843(d).

USSG § 5G1.1(a) provides that when sentencing on a single count of conviction, where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.

Judicial interpretation of USSG § 5G1.1(a) confirms its clarity. When the guidelines are higher than the statutory maximum, section 5G1.1(a) comes into play and reduces the sentence to the statutory maximum. *United States v. Cook*, 938 F.2d 149 (9th Cir.1991). The statutory maximum displaces any higher guideline sentence, regardless of the status of the offender. *United States v. Dunn*, supra.

The defendant submits that his sentence under Count 3 should have been the statutory maximum of 8 years and not 56 years as imposed by the trial court.

Appellant's brief also attached as Appendix C, the relevant portions of the April 5, 2001 Sentencing Hearing (Appendix C in Appellant's brief, p. 2–16).

15. On October 22, 2001, Appellee's Response Brief was filed with the Tenth Circuit Court of Appeals, In Appellee's Response Brief, the government asserted in reference to Count 3:

## II. McGEE'S SENTENCE AS TO COUNT THREE OF THE INDICTMENT WAS IMPROPER AND ILLEGAL.

### A. Standard of Review

The Appellate Court reviews the legality of a sentence *de novo. United States v. McCrae*, 714 F.2d 83, 84 (9th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). *United States v. Dunn*, 946 F.2d 615, at 619 (9th Cir.1991).

### B. Discussion

The government asserts that the sentence McGee received was illegal and improper. McGee was convicted after jury trial as to Count Three of the Indictment, which charged him with knowingly, intentionally, intentionally, and unlawfully using a communication facility, (a telephone) in committing, causing, and facilitating the commission of a felony under 21 U.S.C. § 841(a)(1); in that he used a telephone to discuss various matters concerning the possession with intent to distribute and distribution of phencyclidine (PCP)". (Doc. 7)[4]

---

4. Count Three of the Indictment alleged one (1) count of a violation of Title 21, U.S.C. § 843(b)

The issue with regard to Appellant's sentence and objection to the Presentence Investigative report (PSI) arose during sentencing on April 5, 2001, specifically a change in the PSI involving the punishment range for the conviction of Count Three. The PSI dated February 26, 2001, treated Count Three as *one* individual count of conviction, as it was alleged in the Indictment. However, the revised PSI, dated March 1, 2001, treated Count Three as *seven* individual counts of conviction, by virtue of the verdict form sent to the jury, asking the jurors to determine how many particular telephone calls were made."[5] See Attachment A, Presentence Investigative Report, dated February 26, 2001 and Attachment B, Revised Presentence Investigative Report, dated March 1, 2001, and Sentencing Transcript of April 5, 1001. (Vol. VI, pp. 2–16).

---

5. The jury found that seven particular telephone calls were made in violation of Title 21, United States Code, Section 843(b).

According to the February 26, 2001 PSI the Appellant could have been sentenced up to 8 years, pursuant to 21 U.S.C. § 843(d), due to Appellant's prior drug conviction. The Sentencing court overruled Appellant's objections to the revised PSI, dated March 1, 2001, and sentenced the Appellant to a term of 8 years to be imposed for each of the seven offenses, to run concurrently, for a total of 56 years. (Sentencing Trans., Vol. VI, p. 26).

Count Three of the Indictment charge McGee with one (1) count of a violation of 21 U.S.C. § 843(b), and provided for a statutory maximum of eight (8) years.

A sentence is illegal if it exceeds the statute under which the charge is alleged or, in other words, is one which the judgment of conviction does not authorize. *United States v. Morgan*, 346 U.S. 502, 506, 74 S.Ct. 247, 250, 98 L.Ed. 248 (1954); *United States v. Peredo*, 884 F.2d 1029, 1031 (7th Cir. 1989); *see also*, *Hill v. United States*, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962).

*United States v. Savely*, 814 F.Supp. 1519 at 1523.

As applied in this case, McGee was charged in Count Three, with one count of a 21 U.S.C. § 843(b) violation, providing for a statutory maximum sentence of eight (8) years, based upon his previous drug conviction. The Sentencing Court improperly sentenced McGee to fifty-six (56) years, based upon a jury determination that McGee made a total of seven different telephone calls. This sentence is improper, illegal and should be remanded to the district court for resentencing consistent with the statutory maximum sentence for the count of conviction, eight (8) years.

16. On May 29, 2002 the Tenth Circuit Court of Appeals, in a published opinion No. 01–5076, and in regard to the issue herein, reversed the sentence imposed by the District Court and remanded the case

for resentencing on Count Three. In such order, the Tenth Circuit stated:

> With respect to his sentence, Mr. McGee was indicted and convicted under 21 U.S.C. § 843(b) of only one count of using a telephone to facilitate the commission of the 21 U.S.C. § 841(a)(1) felony. A violation of § 843(b) has a maximum statutory sentence of eight years. Contrary to the indictment, the revised presentence investigation report (PSI) treated Count 3 as having charged one violation for each of the seven telephone calls Mr. McGee made to Ms. Hampton. Relying on the revised PSI, the district court sentenced Mr. McGee for seven convictions, imposing eight years sentences with respect to each telephone call for a total of fifty-six years.

(*U.S. v. McGee*, 291 F.3d 1224, 1227 (10th Cir.2002)).

17. On May 29, 2002, Judgment was filed in the Tenth Circuit Court of Appeals remanding this case to the Northern District of Oklahoma for resentencing.

18. On August 5, 2002, this Court ordered a resentencing for McGee on October 4, 2002 at 10:30 a.m. Further, the Court ordered counsel to be present at resentencing:

> .... and be prepared to discuss the evidence, extensive colloquies with counsel at trial, and the jury verdict with respect to the seven(7) violations of Title 21 U.S.C. § 843(b) unanimously found by the jury for telephone calls made by defendant McGee.... In addition, all counsel should be prepared to discuss the accuracy of the record presented to the Tenth Circuit regarding this issue and the implications of material misrepresentations and omissions to the Appellate Court.

(Order of the District Court dated August 5, 2002).

19. On August 19, 2002, the District Court issued another order to the attorneys of record for the scheduled October 4, 2002 resentencing hearing. In that order, the District Court ordered the parties:

> ... to file, no later than September 27, 2002, a detailed joint statement of the case setting forth all relevant facts, pleadings (including the indictment), excerpts from pleadings, colloquies, instructions, verdicts and motions in this matter pertaining to the issue of the sentencing of defendant McGee for seven (7) separate violations of Title 21 U.S.C. § 843(b). Such statement shall describe all the relevant events and rulings in chronological order. The indictment, all orders entered by the court, and all statements contained in transcripts of Court proceedings shall be quoted in their entirety as they relate to this issue.

(Order of the District Court dated August 19, 2002).

20. On September 27, 2002, the parties filed a document titled "Joint Statement of the Case." On September 30, 2002, the Court issued an order explaining the signatories' failure to comply with the Court's August 19, 2002 order and directed the signatories to cure their failure by submitting a complying document no later than noon on October 3, 2002. On October 3, 2002, the parties submitted a Supplemental Joint Statement of the Case.

21. On October 4, 2002 at 10:30 a.m. the Court conducted discussion with counsel concerning the presentation of the Count 3 sentencing issue to the Court of Appeals and the failure of the supplemental statement of the case to comply with the Court's August 19, 2002 order. The Court entered a written order the same day directing the parties to file no later than noon October 15, 2002 "a detailed

statement of the case that conforms to the requirements of the Court's order."

22. The instant second supplemental statement of the case is the parties' efforts to comply with the Court's directive.

AGREED:

Rob Nigh, Jr.
Attorney for Defendant
Malcolm Derome McGee

David E. O'Meilia
United States Attorney

T. Scott Woodward
First Assistant United States Attorney

Robert T. Raley
Assistant United States Attorney

Paul D. Brunton
Federal Public Defender

Jack Schisler
Assistant Federal Public Defender

Thomas McCormick
Appellate Counsel